UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HALLMARK AMERICAN INSURANCE COMPANY,

   Plaintiff,

   v.

RONALD C. BROYLES, et al.,

   Defendants.

Case No. 15-cv-05536-RS

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

Plaintiff Hallmark American Insurance Company issued a liability insurance policy to Tom Wasson, an individual who operates a small aircraft repair business under the name Tom's Aircraft Enterprises ("Tom's") at Lampson Field airport in Lake County, California. Tom's serviced a small plane owned by Ronald Broyles. On the first flight after Tom's returned the plane to Broyles, it crashed, resulting in permanent and serious injuries to Broyles. Broyles and his wife Jean sued Tom's in state court, alleging negligence in the repair services provided.

In this action, Hallmark seeks declaratory relief that its maximum exposure under the policy it issued to Tom's is $100,000 under a "per person" limitation, rather than the $1 million that would apply under a different section with no such limitation. Hallmark has dismissed Tom's without prejudice, and the action is proceeding only against the Broyles. Hallmark now moves for summary judgment.

The parties present no material factual disputes. Each side instead contends that the plain

1  language of the policy supports their respective positions.  Because Hallmark's reading of the
2  contractual language is sound, and the Broyles' proffered interpretation is not, Hallmark's motion
3  will be granted in part. A question remains whether the applicable insurance limit is $100,000, or
4  $200,000 for reasons explained below.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted).  If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including

CASE NO. 15-cv-05536-RS

1  questions of credibility and of the weight to be accorded particular evidence.  *Masson v. New*
2  *Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475
3  U.S. at 588 (1986).  It is the court's responsibility "to determine whether the 'specific facts' set
4  forth by the nonmoving party, coupled with undisputed background or contextual facts, are such
5  that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W.*
6  *Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).  "[S]ummary
7  judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such
8  that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.
9  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
10 non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

There is no dispute that Hallmark issued a Broad Form Airport Liability Insurance policy to Tom Wasson that was in force at the time the Broyles' airplane was serviced, and when it subsequently crashed.  A section of the policy entitled "Hazard Division 1" provides coverage for "Airport Operations."  A second section, "Hazard Division 2" provides coverage for "Products and Completed Operations."[1]  The coverage limit under both Division 1 and Division 2 is $1 million per occurrence.  Under Division 2, however, a further limitation of coverage to $100,000 for "each person" also applies.

Hallmark concedes coverage is available under Division 2, and that therefore the Broyles may be entitled to recover up to $100,000.[2]  The Broyles, understandably, seek coverage under Division 1, given its substantially higher limit of $1 million without an "each person" limitation.  The basic insuring agreement applicable to both Divisions (and to others not at issue here) provides:

---

[1] Certain other coverages under the policy are undisputedly not implicated here.

[2] Whether the available coverage is $100,000 or $200,000 is discussed further below.

> We agree to pay all sums which you or someone we protect becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence arising out of Hazard Divisions 1 through 5, as stated in your Coverage Identification Page and described below. . . .

The parties agree there was "bodily injury . . . caused by an occurrence" here. The question is whether the occurrence arose out of a hazard described in Division 1 or a hazard described in Division 2.

A. *Division 1*

As noted, Division 1 is entitled "Airport Operations." It states:

> "Airport operations" refer to liability arising out of your ownership, maintenance, operation or use of the airport, and all of your operations at the airport necessary or incidental thereto, *excluding liability arising out of* goods or product manufacturing, sales, distribution or *service operations performed by you,* or otherwise arising out of any other Hazard Division.

(Emphasis added.) The Broyles' strenuous insistence to the contrary notwithstanding, Division 1 unambiguously has no application on the facts here. Tom's alleged liability to the Broyles arises from the repair services it provided for the airplane. The Broyles' claims against Tom's asserted in the underlying state court action plainly are excluded from coverage under Division 1 as "liability arising out of . . . service operations performed by you . . . ."[3]

The Broyles complain that the language of Division 1 first offers coverage to Tom's ("liability arising out of . . . all off your operations at the airport") and then immediately takes it away ("excluding liability arising out of . . . service operations performed by you"). While it may be true that the effect of this language is to render Division 1 inapplicable to the majority of Tom's activities at the airport, that does not somehow make the policy "illusory" as the Broyles suggest,

---

[3] Because, as discussed below, Hallmark has correctly conceded that the liability arises out of a Hazard encompassed in Division 2, the "catchall" language "or otherwise arising out of any other Hazard Division" also precludes coverage under Division 1, but Hallmark need not rely on that catchall given the express exclusion for "service operations performed by you."

or permit the exclusion for "liability arising out of . . . service operations performed by you" to be read out of the policy.  Division 1 still provides protection to Tom's (and to the County of Lake, as the owner of the airport and Tom's lessor) for any liabilities that might arise from Tom's presence at, and use of, the airport facilities *other* than those arising from its "service operations."  However small the potential for such liabilities might be, it exists, and insuring against that potential is not meaningless. The County, as lessor, has a particularly legitimate interest in requiring Tom to carry insurance against such liabilities, as it likely would be jointly named in any third party-suit arising from Tom's operations at the airport *other* than those alleging negligent airplane servicing or maintenance.  Accordingly,  the policy unambiguously does not provide coverage under Division 1 on the undisputed facts here, and there is no basis to disregard the clear policy language.

   *B.  Division 2*

As noted, Division 2 is entitled "Products and Completed Operations."  Its first paragraph relates to goods and products "manufactured, sold, handled or distributed" by the insured and is not implicated or in controversy here.  The second paragraph states:

> Service operations performed by you in connection with the ownership, maintenance, operation or use of the airport if the occurrence happens after the services have been completed or abandoned. Service operations will not be deemed incomplete because they are improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement. We only provide coverage for liability arising out of goods or products or service operations that are identified as covered classes in a "Hazard Description Schedule" attached to your policy.

The referenced "Hazard Description Schedule" in the Tom's policy extends coverage to liability arising from "Fixed Wing Aircraft Repairs and Services (Excluding Propeller or Engine Overhaul)."  That is, of course, exactly the liability alleged against Tom's in the underlying action.  Hallmark has correctly acknowledged that coverage potentially exists under Division 2.

The Broyles go to great lengths to argue there is *no* coverage available under Division 2,

presumably because they are attempting to avoid the "catchall" provision in Division 1, which as observed, renders that division inapplicable if coverage exists under any other division. That effort is misguided, given that there would be no coverage under Division 1 even in the absence of the catchall, because liability arising from "service operations performed by you" is expressly excluded. Thus, as Hallmark points out, were the Broyles to succeed in showing there is no coverage under Division 2, there would be no coverage at all, not even the $100,000 Hallmark acknowledges is available.[4]

The Broyles' attempt to show Division 2 to be inapplicable is unpersuasive in any event. They argue the repairs performed by Tom's had not been "completed" at the time of the occurrence—the crash—because Tom's had failed correctly to diagnose and remedy the actual problem giving rise to the performance symptoms they had experienced. Indeed, the Broyles contend, the "incomplete" repairs were the direct cause of the crash. The policy language, however, expressly provides that "[s]ervice operations will not be deemed incomplete because they are improperly or defectively performed." Thus, while it would actually be against the Broyles' interest to succeed in showing that there is no coverage under Division 2 because the repairs were not completed, or for any other reason, they have not done so.

The Broyles' remaining arguments all rest on the assertions that it is unreasonable, inequitable, and contrary to Tom's expectations when it purchased insurance, for there to be a $100,000 per person limitation under Division 2. As alluded to above, the Broyles point out that Lake County *requires* Tom's to carry a $1 million liability policy under the terms of the lease. They further point out that Tom's greatest liability risks arises from the airplane servicing work it performs, which they then argue means those activities somehow must fall under Division 1, and

---

[4] The Broyles assert: "Given the facts of this case, it seems clear we can all agree that the term 'completed operations' is pivotal." Not so. That term relates only to whether there is coverage under Division 2, and Hallmark has conceded such coverage exists. The Broyles' error lies in their insistence on battling the straw man that existence of coverage under Division 2 will preclude coverage under Division 1 (pursuant to the "catchall"). As discussed above, there is no coverage under Division 1 for liability arising from service operations, whether or not there is coverage under Division 2.

its $1 million limit, without any lower limit for "each person."

Somewhat contradictorily, the Broyles also point to the fact that the bulk of the premium Tom's pays is allocated to coverage under Division 2, which they say reflects the insurer's recognition that the primary risk lies in service operations. That latter point, however, only supports the notion that the liability from this occurrence is addressed by Division 2, not Division 1. Furthermore, there is no contradiction in the insurer both charging the highest premium *and* imposing an additional limitation ($100,000 each person) where the exposure is greatest.[5] Accordingly, there is no basis to read out of the express policy language the exclusion in Division 1 for "liability arising out of . . . service operations performed by you." The only coverage triggered under the facts here is that provided in Division 2.

The Broyles also suggest they have "affirmative defenses" that preclude granting Hallmark's motion. The Broyles complain that Hallmark failed to appoint *Cumis* counsel for Tom's and delayed unduly in asserting its coverage positions, all to the direct prejudice of Tom's and the indirect prejudice of them. Their arguments, however, turn in large part on their same mistaken understanding that the meaning of "completed operations" in Division 2 is critical to whether there is coverage under Division 1 or not. Moreover, the Broyles have not shown how any of their stated affirmative defenses (estoppel, laches, unclean hands) could somehow destroy Hallmark's entitlement to declaratory relief as to what its obligations under the policy are.

---

[5] Whether the policy satisfies Tom's contractual obligation with Lake County to carry $1 million liability policy is a separate issue that could not be resolved in this case, and would not alter the result here even if it does not. It is notable, though, that the policy *does* have a total limit of $1 million under both divisions. Moreover, the "each person" limit only applies to the coverage for the category of occurrences (Tom's repair work) in which the county is much less likely to be named as a co-defendant to Tom's. For example, if in the course of doing business at the airport, Tom's creates some kind of hazardous condition on a sidewalk and a member of the public trips and falls, sustaining a catastrophic head injury, Tom's and the county likely would both be named in any suit. Tom's coverage would be under Division 1, and the county as the landlord would have the benefits of $1 million protection it required in the lease. If, instead, Tom's fails to repair an airplane properly, as allegedly happened here, it is much less likely that there will be any colorable claim against the county, and it faces little risk of suit. Indeed, the Broyles brought no claim against the county in the underlying action.

### C. Each person

Hallmark contends Jean Broyles' claim for loss of consortium is derivative of her husband's bodily injury, and not a separate claim, such that the Broyles could obtain a total of $200,000 under the policy. Hallmark acknowledges the holding in *Abellon v. Hartford Insurance Co.*, 167 Cal.App.3d 21 (1985) supports an argument that separate coverage may exist for a spouse's loss of consortium claim under an "each person" limitation. Hallmark urges, however, that *Abellon* was wrongly decided and conflicts with other California authority, or, that even under its holding, a spouse claiming loss of consortium must still establish that his or her injuries constitute a "bodily injury." *See id.*, at 30 ("Whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to a cause of action for loss of consortium is a matter of proof. When the injury is emotional rather than physical, the plaintiff may have a more difficult task in proving negligence, causation, and the requisite degree of harm; but these are questions for the jury, as in all litigation for loss of consortium.") (internal quotations and citation omitted).

The Ninth Circuit has harmonized the supposed conflict in California law:

> *Abellon* distinguished the policy language in question from that in [*United Services Auto. Ass'n. v.*] *Warner* 64 Cal.App.3d 957 (1976)] and [*State Farm Mutual Auto Ins. Co. v.*] *Ball*, [127 Cal.App.3d 568 (1981)]. Whereas policy language in *Warner* and *Ball* expressly precluded separate coverage for consortium claims, the language in *Abellon* did not.

*Allstate Ins. Co. v. Fibus*, 855 F.2d 660, 663 (9th Cir. 1988). Accordingly, Hallmark has not shown that this court would be free to dismiss *Abellon* as erroneous. Furthermore, Hallmark has not shown that the policy language here is materially different from that in *Abellon*.

The Broyles' written opposition failed to address these issues at all, although at oral argument they urged that *Abellon* supports a conclusion that Hallmark's liability is no less than $200,000 total. Hallmark's contention that it was incumbent on the Broyles to come forward with evidence and/or authority to show Jean Broyles suffered a "bodily injury" presents a close call. Ultimately, however, Hallmark did not meet its initial burden to establish as a matter of law that the loss of consortium claim cannot give rise to a separate $100,000 liability limit.

## IV. CONCLUSION

Hallmark's motion for summary judgment is granted in part, as set forth above. Hallmark's request for a declaration that the subject policy provided no more than $100,000 in coverage, as opposed to $200,000, is denied. The bench trial set for January 9, 2017, accordingly remains on calendar.

**IT IS SO ORDERED**.

Dated: September 15, 2016

RICHARD SEEBORG
United States District Judge